[886 NYS2d 587]

Cosby B. Smiley, Petitioner, v Monroe Williams, Sued Herein as John Williams, et al., Respondents.

Civil Court of the City of New York, New York County, October 5, 2009

**APPEARANCES OF COUNSEL**

*Linda Rzesniowiecki*, New York City, for petitioner. *Monroe Williams*, respondent pro se.

### OPINION OF THE COURT

SABRINA B. KRAUS, J.

## Background

This summary holdover proceeding was commenced by Cosby B. Smiley (petitioner) and seeks to recover possession of "first floor/garden apartment" at 40 West 119th Street, New York, New York 10026 (subject premises) pursuant to RPAPL 713 (3) based on the allegation that Monroe Williams, sued herein as John Williams (respondent), is a squatter who entered and remained in possession without the permission of petitioner.

## Procedural History

Petitioner commenced this proceeding by issuance of a notice to quit dated July 17, 2009, requiring respondent to surrender possession on or before August 3, 2009. The notice was served by conspicuous place delivery on July 23, 2009. The petition issued August 19, 2009, and was served by conspicuous place service on August 24, 2009. The case was initially returnable on September 1, 2009. On September 25, 2009, the proceeding was assigned to Part S for trial. The trial commenced on September 25, 2009, and continued and concluded on September 29, 2009. At the conclusion of the trial, the court reserved decision.

## Trial

At trial petitioner put the following documents into evidence:

exhibit 1: a certified deed for the subject premises dated June 17, 1987, conveying the property from Cosby B. Smiley as administrator "with Will Annexed of the Estate of Artie Mae Springer" to Cosby B. Smiley in his individual capacity; no will was annexed to the deed or otherwise offered into evidence; and

exhibit 2: a certified copy of the multiple dwelling registration, which was filed by petitioner on August 27, 2009, and was certified by the Department of Housing Preservation and Development (HPD) on the same date; and

exhibit 3: an order to repair/vacate issued by HPD effective September 11, 2009; and

exhibits 4-6: registration forms filed with the Division of Housing and Community Renewal (DHCR) in Albany for the subject premises, along with proof of mailing to DHCR.

Petitioner testified first on his own behalf. The subject building is a single-room occupancy (SRO) with four floors. Petitioner alleged that the subject premises is subject to rent stabilization, but that it is exempt from rent stabilization, as it is owner occupied. Petitioner alleged that Hozel Williams is the tenant of record for the subject premises, and that he lived there in 2004 or 2005, until he was hospitalized in mid to late 2007 for a period of one year.

Petitioner testified that in October 2008, when Hozel Williams was released from the hospital, petitioner learned that respondent was "squatting" in the subject premises. Petitioner testified that he had no relationship with respondent and had not received any payment from him. Petitioner also testified that approximately one week before the trial, he learned that Melvin Harris and Tony Spence were also alleging to be occupants of the subject premises.

Petitioner testified that he and respondent had a peaceful discussion, and that petitioner told him the subject premises was not for rent, and that it had always been family occupied. Petitioner, however, allowed respondent to remain in occupancy from October 2008 forward, taking no action to evict him until the issuance of the predicate notice in this proceeding. Petitioner testified that since that date he has visited the subject premises on a regular basis and had discussions with respondent, and that they exchanged phone numbers.

Hozel Williams also testified for petitioner. Mr. Williams testified that he lived in the subject premises from 2004 through 2007, at which time he was hospitalized for approximately one year. Mr. Williams testified that when he came out of the hospital, he tried to enter the subject premises, but found that his key did not work in the lock. Mr. Williams said he found a new place to live, and has no desire to return to the subject premises and has not lived there since 2007. Mr. Williams did

not call the police, or take any action regarding not being able to get into the subject premises, except to notify petitioner. Mr. Williams never had a lease for the subject premises, and never paid rent for the subject premises. Mr. Williams testified that petitioner is his nephew. Mr. Williams described the subject premises as consisting of one room, and testified that, while he lived there petitioner was remodeling the premises installing new appliances and improving the building.

Respondent also testified on his own behalf. Respondent testified that he moved into the subject premises in approximately May 2007, and that he paid petitioner $200 in June 2007. Respondent further testified that the subject premises was close to uninhabitable at the time his occupancy commenced, and that it did not even have a front door or a lock, both of which respondent found and installed himself. Respondent testified that he paid for materials to make the subject premises habitable.

Respondent was arrested and held in custody from mid-August 2009, until approximately September 21, 2009. Respondent testified that he occupied the subject premises with Melvin Harris and Aubrey Spencer who were both there intermittently. Respondent also kept two dogs in the garden of the subject premises. Respondent submitted photographs in evidence showing the subject premises to be in very poor condition, and supporting his claim that while the case was pending petitioner appeared to have accessed the subject premises and gone through personal belongings inside the subject premises.

The subject building has been maintained in a deplorable manner. In addition to the vacate order issued by HPD, which provides that the building may not be reoccupied until a new certificate of occupancy has been obtained, there are 71 open violations for the building, including 11 class A violations, 42 class B violations, and 17 class C violations.

Examples of specific conditions include bathroom windows used for SRO residents have been sealed with wood, the roof leaks, the basement has been cited for violations for being filled with feces for years, heating and hot water has not been provided, the common toilets for the SRO residents were not operating, water was not running in the common bathrooms, the common areas of the building are filled with garbage, there is no lighting outside the entrance to the building, the walls, stairs, and ceilings are in need of repair, gas was not being supplied to the stoves to be used for cooking.

## Discussion

Petitioner instituted this proceeding pursuant to RPAPL 713 (3) alleging that respondent was a squatter. RPAPL 713 (3) provides that a summary proceeding may be maintained after service of a 10-day notice to quit on the grounds that the respondent "squatted upon the property without the permission of the person entitled to possession and the occupancy has continued without permission." Petitioner alleges that the initial occupancy was without permission, but petitioner acknowledged that from October 2008 through the date of this proceeding he allowed respondent to remain in occupancy and took no formal steps to remove respondent from occupancy. The court finds that even if petitioner did not consent to respondent's initial occupancy he did subsequently consent to his continued occupancy from October 2008 forward.

■ In a squatter proceeding "[t]he touchstone is a nonpermissive entry followed by the absence of any acts, primarily on the part of the owner . . . which would ripen the possession into any form of tenancy (*Kassover v Gordon Family Assoc.*, 120 Misc 2d 196, 198 [1983])." Here, assuming arguendo the court did credit petitioner's testimony that prior to October 2008 the occupancy was without permission, from October 2008 forward that was not the case.

■ Petitioner alleges that the subject building is an SRO, and that the building and the subject premises are subject to rent stabilization. Petitioner acknowledges that respondent has been living in the subject premises since October 2008. Section 2520.6 (j) of the Rent Stabilization Code (9 NYCRR) defines a permanent tenant as an individual who has "continuously resided in the same building as a principal residence for a period of at least six months." Based on the undisputed facts as established at trial, respondent is entitled to the protections of rent stabilization as the permanent tenant for the subject premises.

The fact that petitioner denies receiving any payment of rent or entering any formal agreement with respondent, even if true, does not deprive respondent of rights under the statute; the sole criterion used under the statute is continuous residence for a six-month period, which is not disputed here (*Kanti-Savita Realty Corp. v Santiago*, 18 Misc 3d 74 [App Term, 2d Dept 2007]; *Brianic Intl. Realty Corp. v Pitt*, 24 Misc 3d 940 [2009]).

Petitioner's claim that the subject premises is permanently exempt from rent stabilization based on the fact that it was occupied by his uncle is without merit. The registrations that

were filed with DHCR in August were fraudulent. Petitioner filed an initial building registration for the subject building on August 19, 2009. Petitioner alleged that the building contains eight regulated units and one unit petitioner described in the registration as "permanently exempt."

Petitioner did not serve the registrations on anyone, and only filed them with DHCR. Section 2520.11 of the Rent Stabilization Code defines applicability and provides that all units not specifically exempted are covered. The only exemption in the section related to owner occupancy is in section 2520.11 (i), an exemption for:

"nonhousekeeping, furnished housing accommodations, located within a single dwelling unit not used as a rooming or boarding house, but only if:

"(1) no more than two tenants for whom rent is paid . . . who are not members of the owner's immediate family, live in such dwelling unit; and

"(2) the remaining portion of such dwelling unit is occupied by the owner or his or her immediate family."

Other issues aside, Hozel Williams, the alleged uncle of petitioner, is not immediate family as that term is defined by the Rent Stabilization Code. Section 2520.6 (n) defines "Immediate family," and the definition does not include uncle or nephew. Thus, occupancy by Hozel Williams is not occupancy by petitioner's immediate family as defined by the Code.

Moreover, by Hozel Williams' own admission at trial, he gave up any claim to occupancy in or about October 2008, and has not lived in the subject premises since 2007. Additionally, the court notes that there was no clear and convincing evidence provided by petitioner that Hozel Williams ever occupied the subject premises for living purposes. Notably not a single document was offered to show Mr. Williams used the subject premises as his residence, he did not accurately describe the residence in his testimony, describing it as one room, when all other accounts describe it as a three-room residence, and the credible weight of evidence at trial suggests that the subject premises was not really in habitable condition at the time Hozel Williams allegedly lived there.

Finally, even if Hozel Williams had lived there, and had been an immediate family member, that does not create a "permanent" exemption under the code, and any such exemption would have ended when Hozel Williams moved somewhere else on or about October 2008.

Based on the foregoing, the court finds that Monroe Williams is the permanent tenant of the subject premises, and is entitled to have a lease issued in his name. The petition is dismissed.